FILED

April 8 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0774

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 116

PATRICK KEITH HIRT,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Appellee.


APPEAL FROM:    District Court of the Twenty-First Judicial District,
                      In and For the County of Ravalli, Cause No. DV-06-37
                      Honorable James Haynes, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

        Patrick G. Sandefur, Attorney at Law, Missoula, Montana

        For Appellee:

        Hon. Steve Bullock, Montana Attorney General; Micheal S.
        Wellenstein, Assistant Attorney General, Helena, Montana

        George H. Corn, Ravalli County Attorney, Hamilton, Montana


                        Submitted on Briefs: March 11, 2009

                                  Decided: April 7, 2009

Filed:

              _____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Patrick Keith Hirt appeals from the Opinion and Order denying his Amended Petition for Postconviction relief entered October 26, 2007 by the District Court of the Twenty-First Judicial District, Ravalli County, the Hon. James Haynes presiding. We affirm.

¶2     Hirt presents the following issues for review:

¶3     Issue One: Whether Hirt was erroneously designated as a Level 3 sexual offender under § 46-23-509, MCA, based upon misinformation.

¶4     Issue Two: Whether Hirt was denied effective assistance of counsel at sentencing, on direct appeal and on postconviction relief.

### PROCEDURAL AND FACTUAL BACKGROUND

¶5     In June, 2003, Hirt was charged in Ravalli County with sexual intercourse without consent involving a three-year-old girl and with sexual assault involving a fourteen-year-old girl. Attorney Kelli Sather represented Hirt from July, 2003, through his sentencing in April, 2004.

¶6     On the opening day of trial in December, 2003, Hirt and the State entered a plea agreement in which Hirt agreed to plead no contest to the sexual assault charge in return for which the State dismissed the sexual intercourse without consent charge. The State agreed to recommend a sentence of no more than 10 years while Hirt was free to argue for a lesser sentence. On December 15, 2003, the District Court conducted a change of plea hearing, received an account for the factual basis of the plea from Hirt, and advised Hirt of his rights in regard to the plea. Hirt and Sather represented to the court that they believed that he

2

would be found guilty if tried. Hirt confirmed that his plea was voluntary and that Sather had given him good advice and representation. The District Court accepted the plea of no contest.

¶7     The parties agreed to designate Michael English or, if he could not serve, Michael Scolatti, to conduct a psychosexual evaluation of Hirt prior to sentencing. English completed his evaluation in January, 2004, recommending that Hirt be designated as a Level 3 offender due to his high risk of re-offending and the low probability of successful treatment. The recommendation was based upon Hirt's history of drug and alcohol abuse, his inability to control his use, the results of two risk assessment tests, Hirt's credibility, Hirt's inability to take full responsibility for his acts, and his penchant for mixing prescribed medications and alcohol.

¶8     On March 4, 2004, Probation Officer Bill Buzzell filed his presentence investigation (PSI) with the District Court. The PSI detailed Hirt's long criminal offense history, including 17 misdemeanor convictions and three felonies, occurring in several states. Buzzell recommended a 25-year sentence with 15 years suspended.

¶9     Sather reviewed the English report and was concerned about the Level 3 offender recommendation in addition to mistakes she thought he had made. She had worked with Scolatti in the past, and called him to determine whether he could do a second psychosexual evaluation on Hirt. After their conversation, Scolatti told her that he thought Hirt could qualify for a Level 2 designation. Sather obtained permission of the District Court for Scolatti to conduct another evaluation.

3

¶10 In the meanwhile, Hirt had reviewed the PSI and informed Sather that he had one felony conviction and not three as listed. Sather and her office investigated the circumstances of the two questioned felony convictions, and obtained supporting documents and records from other jurisdictions. They determined that Hirt was correct in that he had only one felony conviction, and informed Buzzell. Buzzell issued an amended criminal history report accurately reporting that Hirt had only one prior felony conviction. Buzzell also reduced his sentence recommendation from 25 years to 10 years, as provided in the plea agreement.

¶11 When Scolatti completed his evaluation, he also recommended that Hirt be designated as a Level 3 offender, agreeing with much of the English evaluation. Scolatti told Sather that whether Hirt had one prior felony or three would not affect his recommendation because of the other significant factors including Hirt's chemical dependency and mental health issues and his deviant interest in young girls. At this point Sather determined that she could not call Scolatti as a witness at sentencing because he agreed with English on most material points, and because he additionally would testify that Hirt had a deviant interest in young girls.

¶12 At the sentencing hearing on April 22, 2004, Hirt changed his plea to guilty to the one charge of sexual assault to comply with the requirement of § 46-12-204, MCA. Hirt again expressed satisfaction with Sather's representation and provided a factual basis for his guilty plea. Sather noted Buzzell's corrected criminal history to the court.

¶13 Evaluator English testified as to his Level 3 recommendation and the court received his report. He testified that it was based upon a number of factors, including the results of two risk assessment tests ("instruments"), in which Hirt scored as a high risk to reoffend on

4

one and a moderate risk on the other. English testified that his risk assessments were completed with the three-felony history. Felony history is one of many factors that go into the risk assessment tests, and some tests add points for any felony convictions while others add points for successive convictions. English testified that he did not rescore the risk assessment tests with the one-felony information and that while that might have changed the result, he could not say that it would have.

¶14 English also testified that his Level 3 recommendation was further based on Hirt's history of drug and alcohol abuse, his inability to control his use, the likelihood that he would continue to use and to offend, his movement from crimes against property to crimes against people, and his inconsistent accounts of the incidents indicating a lack of credibility. All these factors pointed to the likelihood of Hirt's being unable to control his future behavior toward females.

¶15 Hirt made a statement to the District Court expressing his sorrow for what had happened, blaming his conduct on his drinking. The State urged a 10-year sentence with a Level 3 designation, while Sather urged a Level 2 designation with a 10-year suspended sentence.

¶16 Prior to sentencing, the State made representations to the District Court as to the contents of Scolatti's evaluation, including the conclusion that Hirt had a deviant sexual interest in girls. Up to that point, Sather had been unaware that Scolatti had sent a copy of his evaluation to the prosecutor. Scolatti's report was not placed into the record, and Sather declined a recess to allow her to call him as a witness. She still believed that Scolatti's

5

evaluation was more harmful to Hirt than the English evaluation and that he should not be called as a witness.

¶17 The District Court sentenced Hirt to 10 years in accordance with the plea agreement and designated him a Level 3 offender.

¶18 Sather filed a notice of appeal and withdrew as Hirt's counsel when she got a job with the Public Defender. Keithi Worthington substituted as Hirt's counsel on appeal. Worthington discussed the appeal with Hirt, and he urged her to raise issues regarding his belief that erroneous felony conviction information had been used at sentencing. Worthington researched the sentencing issue, interviewed Sather and Sather's office assistant, interviewed Scolatti, read the sentencing transcript, the PSI and the evaluations. She determined from this review that there was no ground upon which to appeal that aspect of the sentence.

¶19 Worthington concluded that the portion of the sentence imposing restitution and requiring Hirt to pay for the cost of his court-appointed counsel were invalid and should be appealed. She did so successfully, obtaining a decision from this Court remanding the matter for a re-sentencing. *State v. Hirt*, 2005 MT 285, 329 Mont. 267, 124 P.3d 147.

¶20 In November, 2006, Hirt filed a petition for postconviction relief and then an amended petition in February, 2007, represented by attorney Randall Lint. The petition contended that the sentence had been based upon misinformation, that Sather had provided ineffective assistance of counsel at sentencing, and that Worthington had provided ineffective assistance of counsel on appeal.

6

¶21   The Hon. James Haynes, the same judge who took Hirt's prior changed pleas and who sentenced him, held an evidentiary hearing on the petition on July 30, 2007.  The parties through counsel submitted post-hearing findings of fact and conclusions of law.  After those documents were filed, Hirt filed his own pleading with the District Court in which he complained that none of his attorneys, including Lint, had raised issues regarding the validity of the risk assessment tests used by English and Scolatti.  Hirt contended that the tests lack credible scientific support, a discovery he had made doing research on line while in prison.  He also alleged that Lint refused to raise these issues for him because Lint said he was a youth sports coach and did not want his name associated with a case involving sexual assault on a minor.  The District Court ultimately ruled that Hirt's later filing was not timely, was not properly before the court and was not considered.

¶22   On October 26, 2007, the District Court issued an opinion and order, including extensive and detailed findings of fact and conclusions of law, denying Hirt's petition for postconviction relief.  The court found that Hirt had not been sentenced upon misinformation because the true number of prior felony convictions was clear prior to sentencing.  The court found that Sather had not provided ineffective assistance at sentencing in regard to English and Scolatti, finding that she made reasoned, fact-based professional judgments in deciding to not ask English to re-score his risk assessments and to not call Scolatti as a witness.  Specifically, the court found that if Scolatti had testified in accordance with his report, the court might not have followed the plea agreement, resulting in a longer sentence. The court found that Sather's actions met an objective standard of reasonableness for legal representation.

7

¶23 The District Court also found that Worthington had provided effective assistance of counsel on the successful appeal to this Court. The court found that Worthington had not "abandoned" Hirt and that her decisions on what issues to raise on appeal were made after thorough research and investigation and that her representation was objectively reasonable. This appeal followed.

## STANDARD OF REVIEW

¶24 This Court reviews a district court's denial of a petition for postconviction relief to determine whether the district court's findings of fact are clearly erroneous and its conclusions of law are correct. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861. An issue of whether the district court violated a defendant's constitutional rights at sentencing is reviewed de novo to determine whether the district court's interpretation of law is correct. *State v. Phillips*, 2007 MT 117, ¶ 11, 337 Mont. 248, 159 P.3d 1078. Ineffective assistance of counsel claims present mixed questions of fact and law that this Court reviews de novo. *Whitlow*, ¶ 9.

## DISCUSSION

¶25 *Whether Hirt was erroneously designated as a Level 3 sexual offender under § 46-23-509, MCA, based upon misinformation.* Hirt's first issue is that he was sentenced based upon materially false information. A defendant is entitled under the United States and Montana Constitutions to due process protection against sentencing based upon misinformation. *Phillips*, ¶ 17. The defendant has the burden to show that the sentencing information was materially inaccurate. *Phillips*, ¶ 17. Where the sentencing court does not rely upon

8

materially inaccurate information, the defendant is not entitled to resentencing on due process grounds. *Phillips*, ¶ 17.

¶26 In the present case Judge Haynes sentenced Hirt and heard his petition for postconviction relief. In both instances he heard the testimony of the witnesses and the arguments of counsel. Judge Haynes was therefore in the best position to know whether the sentence was based upon materially inaccurate misinformation. After careful consideration of the petition for postconviction relief, Judge Haynes held that he had not relied upon materially inaccurate misinformation in sentencing.

¶27 Judge Haynes knew at the time of sentencing that Hirt had one prior felony conviction and not three as the original PSI had stated. He knew that Probation Officer Buzzell had filed an amended PSI correcting the earlier misinformation, and that the corrected criminal history had caused Buzzell to materially alter his sentencing recommendation in Hirt's favor. Judge Haynes knew that the English psychosexual report had been premised upon the three-felony information, and heard English testify that he could not say that changing the number of felonies would make any difference in the outcome of the risk assessment tests. He also heard English testify that the number of felonies is only one factor in the risk assessment testing, and that the risk assessment testing was only one of a number of factors that English relied upon to reach his recommendation for a Level 3 offender designation.

¶28 English testified at sentencing that the Level 3 recommendation was based upon a number of considerations including Hirt's drug and alcohol abuse, his mental health history, his misuse of prescription medication, his credibility, and his failure to assume responsibility for his actions. The District Court was not bound by the recommendation for a Level 3

9

designation, and was required to and did make an independent decision on the issue after considering the range of relevant and material factors presented in the sentencing record.

¶29 Where the district court does not rely on misinformation and the information presented in the PSI is true, there is no error. *Bauer v. State*, 1999 MT 185, ¶ 24, 295 Mont. 306, 983 P.2d 955. We are persuaded that the District Court correctly concluded that Hirt was not sentenced upon materially inaccurate misinformation and that his due process rights were not violated.

¶30 *Whether Hirt was denied effective assistance of counsel at sentencing, on direct appeal and on postconviction relief.* The right to counsel in criminal proceedings is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution. *Whitlow*, ¶ 10. This Court evaluates claims of ineffective assistance of counsel under the test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under that test the defendant must first show that counsel's performance was seriously deficient and that the performance prejudiced the defense to such an extent as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The proper measure of counsel's performance is objective reasonableness. *Whitlow*, ¶ 12. The reviewing court must carefully eliminate the distorting effects of hindsight and must apply a strong presumption that counsel's conduct falls within the wide range of reasonable assistance and that it represents sound trial strategy. *Whitlow*, ¶¶ 15, 21. These same considerations apply to counsel on direct appeal. *Dawson v. State*, 2000 MT 219, ¶ 147, 301 Mont. 135, 10 P.3d 49.

¶31    The primary contention as to sentencing counsel Sather is that she should have requested leave of court to have English re-score his risk assessment test to reflect Hirt's one felony conviction instead of three. Sather knew, because of her interview of Scolatti after he completed his assessment, that reducing the felonies from three to one would not have qualified Hirt for a Level 2 recommendation, especially with all of the other factors that the evaluators considered in addition to the risk assessment tests. Further, English was familiar with the risk assessment tests and testified that he did not know whether the different number of felony convictions would have made any difference. With this factual background, it is most likely that English would have again recommended a Level 3 designation a second time, which would have only served to underscore the strength of the first recommendation. It was objectively reasonable for Sather to conclude that a re-scoring would not have changed the results and might have actually resulted in a worse situation for Hirt.

¶32    As to Scolatti, it is abundantly clear that Sather made an objectively reasonable decision not to take advantage of the District Court's offer to have a recess so that she could call him to testify. Sather already knew that Scolatti would likely provide support for all of English's conclusions and would also add the very serious conclusion that Hirt had a pathological attraction to young girls. She determined, as the District Court has subsequently confirmed, that such testimony could have caused a deviation from the plea agreement and a substantial increase in the agreed-to maximum of ten years.

¶33    Hirt argues that appeal counsel Worthington was ineffective because she failed to raise the issue of sentencing misinformation on direct appeal. As explained above, Worthington knew that Hirt wanted to raise this issue on appeal and so researched it

11

factually and as a matter of law. There is little more that she could have done professionally to arm herself with information on this issue prior to deciding not to raise it on appeal. And, as we have held, her assessment that the sentencing misinformation allegation should not be raised was the proper legal position. In addition, she successfully appealed for Hirt on the two issues that she found to be sufficient to argue. We find that Worthington's decisions were professional and objectively reasonable.

¶34 Last, Hirt claims that attorney Lint filed to provide him with effective assistance of counsel in the postconviction relief proceeding. Hirt's allegations against Lint do not appear in cognizable form anywhere in the record. They are contained only in conclusory allegations that Hirt made in his pro se pleading, and the District Court excluded that pleading from consideration. Hirt is attempting to bootstrap these contentions into the petition for postconviction relief, avoiding the procedural bar of § 46-21-105(1)(b), MCA. That section bars a second petition for postconviction relief unless the issues raised could not reasonably have been raised at the time of the first petition. Even on the face of Hirt's unsupported allegations about Lint's conduct, he acknowledges that he knew the circumstances he now alleges at the time of the evidentiary hearing on his amended petition for postconviction relief. Hirt testified at the hearing on the amended petition and could have raised any concerns he had about Lint's representation at that time. He failed to do so.

¶35 The District Court is affirmed.

/S/ MIKE McGRATH

12

We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE