FILED

March 16 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0166

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 51

FRANK LEROY ROBINSON

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV-08-451
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      William F. Hooks; Hooks & Wright, P.C., Helena, Montana

      For Appellee:

      Hon. Steve Bullock, Montana Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

      George H. Corn, Ravalli County Attorney; T. Geoffrey Mahar,
Deputy County Attorney, Hamilton, Montana

Submitted on Briefs:  January 13, 2010

Decided:  March 16, 2010

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Frank Robinson (Robinson) appeals from an opinion and order of the Twenty-First Judicial District Court, Ravalli County, denying postconviction relief without a hearing. We affirm.

¶2 We restate the issues on appeal as follows:

¶3 Whether the District Court properly denied, without an evidentiary hearing, Robinson's postconviction claim that his trial counsel's failure to request a jury poll about a newspaper article constituted ineffective assistance of counsel.

¶4 Whether the District Court properly denied Robinson's postconviction claim that he was denied the effective assistance of counsel due to a breakdown in the attorney-client relationship.

## BACKGROUND

¶5 Robinson was convicted by a jury of two counts of felony assault on a peace officer, failure to register as a sexual offender, and resisting arrest, on July 21, 2005. Robinson was sentenced as a persistent felony offender to 30 years at the Montana State Prison on September 21, 2005. This Court affirmed the convictions and sentence on direct appeal on February 5, 2008. *State v. Robinson*, 2008 MT 34, 341 Mont. 300, 177 P.3d 488.

¶6 Robinson was represented at trial and on appeal by attorney Matthew M. Stevenson (Stevenson). On June 28, 2005, three weeks before trial, Stevenson filed a motion to continue the trial, on the grounds that Robinson wanted to hire a private

attorney who would need more than three weeks to prepare for trial. However, Robinson never retained private counsel. Judge James A. Haynes denied the motion after discussing the matter with counsel at a hearing on July 1, 2005. Judge Haynes received a letter from Robinson on July 6, 2005, explaining that he was unsatisfied with Stevenson's work and was formally firing him due to ineffective assistance, and requesting a continuance to have adequate time to retain new counsel. Judge Haynes held a hearing the next day and Robinson requested to represent himself.

¶7    After the hearing, Stevenson filed a motion for an order permitting Robinson to substitute counsel. Stevenson indicated that when he visited Robinson at the jail, Robinson told him to never come back. Stevenson asserted that his attempts at communicating with Robinson had fallen on deaf ears, and that his communications had been misunderstood or construed as lies. Stevenson stated that "[d]efense counsel has no vested interest in this case, other than doing his job (which he feels he has done and continues to do)." Although he believed that any other attorney would have similar problems communicating with Robinson, Stevenson agreed with Robinson's assertion that communications between them had been irretrievably broken. Stevenson therefore reluctantly joined in Robinson's request for substitution of counsel. At a hearing on July 14, Judge Haynes advised the parties that Robinson's request to proceed pro se would be addressed by Judge Langton on the morning of the first day of trial.

¶8    Before the jury was called on July 18, 2005, the question of Robinson's representation was discussed at length in chambers. Robinson claimed that he could not trust Stevenson after Stevenson said he had objected to the State raising the existence of

3

parole conditions when he did not. Stevenson explained that Robinson wanted him to make an invalid objection, but that he had objected to a warrantless search. Stevenson indicated that Robinson did not understand his explanation and decided that Stevenson was lying. Additionally, when Robinson wanted to hire private counsel, Stevenson's motion to continue was not supported by an affidavit. Stevenson said there were no grounds for a continuance because new counsel was not hired yet. The court found that there were no grounds to support a claim of ineffective assistance and Robinson could either continue with Stevenson or represent himself. Robinson renewed his request for a continuance so his family could retain new counsel. Judge Langton denied the request and Stevenson remained as counsel during the trial.

¶9 On August 14, 2008, Robinson filed a pro se petition for postconviction relief, alleging various claims of ineffective assistance of counsel against Stevenson. The District Court denied relief and dismissed the petition without a hearing on February 26, 2009. Robinson now appeals from the denial of postconviction relief.

## STANDARD OF REVIEW

¶10 This Court reviews a district court's denial of a petition for postconviction relief to determine whether the district court's findings of fact are clearly erroneous and its conclusions of law are correct. *Hirt v. State*, 2009 MT 116, ¶ 24, 350 Mont. 162, 206 P.3d 908. Ineffective assistance of counsel claims present mixed questions of fact and law that this Court reviews de novo. *Hirt*, ¶ 24.

¶11 A request for substitution of appointed counsel is within the sound discretion of the district court, and this Court will not overrule such a ruling absent an abuse of

4

discretion. *State v. Hendershot*, 2007 MT 49, ¶ 19, 336 Mont. 164, 153 P.3d 619. A district court abuses its discretion if it "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Hendershot*, ¶ 19.

**DISCUSSION**

¶12 The Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, and Article II, Section 24, of the Montana Constitution guarantee a criminal defendant the right to effective assistance of counsel. To evaluate claims of ineffective assistance of counsel, this Court has adopted the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 1064 (1984). *State v. Crosley*, 2009 MT 126, ¶ 54, 350 Mont. 223, 206 P.3d 932. Under the *Strickland* test, the defendant must establish that 1) counsel's performance fell below an objective standard of reasonableness, and 2) a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Crosley*, ¶ 54. This test can be summarized as requiring a showing of deficiency and prejudice to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 1064.

¶13 There is a strong presumption under the *Strickland* deficiency prong that trial counsel's performance was based on sound trial strategy and falls within the broad range of reasonable professional conduct. *Crosley*, ¶ 55. Regarding the *Strickland* prejudice prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome. When a defendant challenges a conviction, the defendant must show the

5

fact finder's reasonable doubt respecting guilt could have been routed by the unprofessional errors of counsel." *Crosley*, ¶ 55.

¶14 *Whether the District Court properly denied, without an evidentiary hearing, Robinson's postconviction claim that his trial counsel's failure to request a jury poll about a newspaper article constituted ineffective assistance of counsel.*

¶15 Robinson alleges that Stevenson's failure to poll the jury regarding whether any jurors had read a local newspaper account of the trial constitutes ineffective assistance of counsel. The District Court summarily rejected Robinson's contention, concluding that it failed to satisfy the procedural threshold for postconviction relief. Section 46-21-104(1)(c), MCA, requires a petition for postconviction relief to "identify all facts supporting the grounds for relief set forth in the petition and have attached affidavits, records, or other evidence establishing the existence of those facts." The District Court noted in its order that at the close of each day of the trial, the court admonished the jury to avoid any press coverage of the trial, and specifically to avoid looking at newspapers unless someone else excised any stories about the trial. The court concluded that Robinson merely speculated that jurors disregarded these admonishments and failed to identify a single fact to support this speculation.

¶16 Robinson discusses at length the utility of jury polling to determine if jurors were exposed to and influenced by prejudicial news coverage. Robinson's argument presents a chicken and egg conundrum: since his lawyer refused to poll the jury, Robinson claims he could not determine whether jurors read the newspaper account, yet this lack of information undermined his petition for postconviction relief, since he could not meet the

6

procedural threshold of identifying facts to support relief. Robinson overstates his case. The question presented here is not whether jury polling is generally valuable, but whether Robinson's lawyer was ineffective for not polling the jury regarding whether they read a newspaper article. Simply because it may be possible to poll a jury in a particular situation does not mean that a failure to poll the jury constitutes ineffective assistance of counsel.

¶17 Focusing our analysis on the question of ineffective assistance of counsel, Robinson fails to establish any prejudice resulting from his counsel's failure to request jury polling. Specifically, Robinson's petition fails to show how polling the jury would have changed the results of the proceedings. In *State v. Kirkland*, this Court noted that the defendant had not submitted any facts indicating that any juror had been exposed to the news accounts of the trial, and the Court found no abuse of discretion in the district court's denial of the defendant's request to poll the jury. 184 Mont. 229, 242-43, 602 P.2d 586, 594 (1979). If a court did not abuse its discretion by denying a request for a jury poll in the absence of evidence that some member of the jury was exposed to potentially prejudicial newspaper accounts, counsel cannot be ineffective for declining to request jury polling without evidence that a juror may have been exposed to a newspaper article.

¶18 Furthermore, the newspaper article in question is a factual, non-editorialized account of the first day of trial. Although the article references Robinson's history of escape and assault, the court permitted the prosecutor to refer generally to this history in order to explain the precautions taken by the officers in serving the arrest warrant on

7

Robinson. Thus, we are unconvinced that any prejudice would occur had a juror not followed the court's admonishments to avoid the news reports during trial. We cannot assume, in the absence of any evidence to the contrary, that jurors in fact read this particular newspaper article or were prejudiced by it.

¶19 Finally, this Court has observed that postconviction proceedings are not a fishing expedition or discovery device in which a petitioner, through broad allegations in a verified petition, may establish the right to an evidentiary hearing. *Smith v. State*, 2000 MT 327, ¶ 28, 303 Mont. 47, 15 P.3d 395. Robinson has failed to demonstrate that his counsel was ineffective by not polling the jury regarding their exposure to a newspaper account of his trial or that the District Court erred by failing to hold a hearing on the request.

¶20 *Whether the District Court properly denied Robinson's postconviction claim that he was denied the effective assistance of counsel due to a breakdown in the attorney-client relationship.*

¶21 Robinson claims there was a clear irremediable breakdown in the attorney-client relationship, confirmed by Stevenson's agreement that all communications had broken down. Robinson supports his claim by citing this Court: "[i]f the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates the defendant's right to effective assistance of counsel." *Hendershot*, ¶ 24. Robinson attempts to illustrate the breakdown in communications by citing some of Stevenson's comments to the court at the July 18 hearing on his motion to permit substitution of

8

counsel: Robinson's actions were a ploy to delay trial; Robinson was making a "personal attack" that was unfair and misguided; and Stevenson was "fed up" with Robinson.

¶22 The District Court concluded that Stevenson's statements were insufficient to warrant substitution of counsel in the absence of any complaints of substance. The court examined how the misunderstanding about a potential objection initiated the disagreement between attorney and client. Despite Stevenson's efforts to explain the legal basis for one objection and lack of validity for another, Robinson concluded that Stevenson lied to him and sought to fire him and retain private counsel. At that point communications between attorney and client broke down. The District Court reiterated the "strong presumption that counsel's defense strategies and trial tactics fall within a wide range of reasonable and sound professional decisions" and then reasoned:

> While unfortunate that Robinson misunderstood the rationale behind Mr. Stevenson's trial tactics and professional decisions and, as a result, attempted to fire him and ceased communications with him, that alone is insufficient to warrant a change in court-appointed counsel. Otherwise, a defendant could claim "irretrievable breakdown in communication" with every court-appointed attorney, ad infinitum. A defendant must, at the least, present "seemingly substantial complaints" about court-appointed counsel. Robinson failed to do so.

¶23 We agree. This Court has clarified that a defendant has a right to meaningful representation, but not a right to "a meaningful client-attorney relationship." *State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817. Bare unsupported allegations are insufficient to establish the total lack of communication required to warrant appointment of new counsel. *Gallagher*, ¶ 10. The record demonstrates that Stevenson maintained communication with Robinson until just prior to trial when Robinson refused

9

to speak with him. Significantly, nothing in the record suggests that Stevenson's actual performance at trial was deficient. Stevenson filed four motions in limine regarding evidence to be presented at trial, presented opening and closing arguments, cross-examined the State's witnesses, presented a witness to the arrest, and was well-prepared despite not knowing whether he would actually try the case in the weeks immediately preceding trial. The record supports finding that counsel's performance was reasonable, and certainly Robinson has presented nothing that overcomes the strong presumption that trial counsel's performance was based on sound trial strategy and falls within the broad range of reasonable professional conduct. *Crosley*, ¶ 55.

¶24 Robinson himself appears to have initiated the breakdown in communication upon which he now bases his ineffective assistance of counsel claim. This falls short of the "complete collapse" of the relationship between attorney and client that this Court discussed in *Hendershot*. In *Hendershot*, the attorney did not attend two substantive procedural hearings, one on the adequacy of his representation; did not answer requests to visit Hendershot or actually see him for months between incarceration and a hearing; scheduled a change of plea hearing without discussing a change of plea with Hendershot; declined to question the State's witnesses; instructed Hendershot to remain silent; joined the State's recommendation for sentencing; and told the court that communications between attorney and client had reached "an irreparable state" and actively joined in Hendershot's request to sever the attorney-client relationship. *Hendershot*, ¶¶ 25-26. Additionally, the conflict between Hendershot and his attorney arose early in the relationship and deteriorated for some time until it reached the "irreparable state"

10

described by both attorney and client. *Hendershot*, ¶ 30. Thus, the facts of *Hendershot* that support an ineffective assistance of counsel claim based on a "complete collapse" in the attorney-client relationship or "irreconcilable conflict" contrast starkly with the facts here. Robinson presented his claim three weeks before trial, based his claim on a disagreement about trial strategy, and initiated the breakdown in communications himself. While Stevenson agreed with Robinson's assertion that communications between them had been irretrievably broken and reluctantly joined in Robinson's request for substitution of counsel, this was not akin to counsel affirmatively arguing against his client as Robinson claims. Stevenson simply acknowledged that Robinson refused to communicate with him, yet despite these difficulties, Stevenson continued to perform reasonably.

¶25 The District Court adequately inquired into Robinson's complaints at the July 18 hearing on substitution of counsel. After hearing from both Robinson and Stevenson, the court found no grounds to support an ineffective assistance of counsel claim. The District Court did not abuse its discretion in denying Robinson's request to permit substitution of counsel, nor was Robinson denied effective assistance of counsel due to a breakdown in the attorney-client relationship.

¶26 Affirmed.


/S/ MIKE McGRATH

11

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA O. COTTER
/S/ JIM RICE

Justice James C. Nelson, specially concurring.

¶27 I concur in the Court's decision, although I do so under a different rationale with respect to Issue 1.

¶28 Initially, it should be noted that as to Robinson's claim that defense counsel rendered constitutionally deficient performance by not polling the jury about the newspaper article, the District Court denied this claim not based on the merits, but pursuant to § 46-21-104(1)(c), MCA, which states that a petition for postconviction relief must "identify all facts supporting the grounds for relief set forth in the petition and have attached affidavits, records, or other evidence establishing the existence of those facts." Robinson makes a plausible argument on appeal that a defendant whose counsel fails to poll a jury about a news story is thereby severely handicapped in his ability to demonstrate in the postconviction arena that he was prejudiced by counsel's conduct, particularly where (as here) the district court refuses to grant a postconviction evidentiary

hearing on the matter. I see no need to reach this issue, however, because in my view Robinson's claim fails for a more basic procedural reason.

¶29 As we do here, we applied the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), in *Whitlow v. State*, 2008 MT 140, 343 Mont. 90, 183 P.3d 861. In *Whitlow*, we clarified the relevant inquiry under the test's first prong (i.e., whether counsel's performance was deficient) and overruled a number of cases that were contrary to this inquiry. *See Whitlow*, ¶¶ 12-21. Specifically, we explained that " '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' " *Whitlow*, ¶ 14 (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065). Thus, we further explained that in order to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, the convicted defendant making a claim of ineffective assistance must demonstrate that "counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *See Whitlow*, ¶¶ 20-21, 33, 39-40.

¶30 In the present case, Robinson's petition for postconviction relief suffers from the same inadequacies as Whitlow's. *See Whitlow*, ¶ 38. I agree with the Court that simply because a jury could be polled in a particular situation does not mean that counsel is per se ineffective for failing to do so. Opinion, ¶ 16. Hence, it was incumbent on Robinson to show that attorney Stevenson's failure to poll the jury in this case fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances. *Whitlow*, ¶ 20. Yet, like Whitlow, Robinson

13

did not offer any evidence of what prevailing professional norms applied to Stevenson's performance, much less attempt to demonstrate how Stevenson's conduct fell below an objective standard of reasonableness measured under those norms and in light of the surrounding circumstances. Rather, like Whitlow, Robinson's claim was based on bald speculation, pure hindsight, and his personal belief that it was unreasonable for Stevenson not to poll the jury. *Cf. Whitlow*, ¶¶ 36-38. This is plainly insufficient to support an ineffective assistance of counsel claim in the District Court, and appellate counsel's contrary arguments do not cure the underlying procedural deficiencies in Robinson's petition, all of which brings me to a concluding observation.

¶31 *Whitlow* has been the law of this State for two years. Yet, in that time, I have seen few petitions for postconviction relief actually supported with affidavits or other evidence of prevailing professional norms plus an analysis of how trial counsel's conduct fell below an objective standard of reasonableness. Postconviction petitioners must understand that they bear "a heavy burden" to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Whitlow*, ¶ 21. A postconviction petitioner's burden of proof requires that his or her petition for postconviction relief be supported with evidence; bald speculation, mere assumptions, conclusory assertions, and 20-20 hindsight will not suffice. Here, the District Court properly ruled that Robinson's petition was procedurally deficient.[1]

---

[1] As an aside, I am not sure what to make of the Court's reasoning in ¶ 17. In that paragraph's last sentence (which seems to relate more to counsel's performance than to the issue of prejudice), the Court suggests that trial counsel who fails to obtain evidence that a juror may have been exposed to a newspaper article cannot be ineffective for

14

¶32    Based on the foregoing rationale, I specially concur in our decision to affirm the

District Court's dismissal of Robinson's "jury polling" claim.


                              /S/ JAMES C. NELSON

---

declining to request jury polling.  Yet, counsel might be ineffective for the very reason that he did not monitor the news coverage and obtain the requisite evidence to support such a request.  And that, in my view, is where Robinson's claim fails.  Although he contends that Stevenson's failure to poll the jury constitutes constitutionally deficient performance, he has not satisfied *Whitlow*'s requirement that such a claim be supported by evidence of prevailing professional norms and an analysis of counsel's conduct in light of those norms and the surrounding circumstances.