FILED

01/31/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0510

DA 21-0510

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 20N

CODY WAYNE JOHNSTON,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DV-18-185
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Joseph P. Howard, Joseph P. Howard, P.C., Helena, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

      Janet Christoffersen, Richland County Attorney, Sidney, Montana

Submitted on Briefs:  September 14, 2022

Decided:  January 31, 2023

Filed:

                                 _____
                                     Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition will be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Cody Wayne Johnston appeals from the August 2021 judgment of the Montana Seventh Judicial District Court, Richland County, denying his petition for postconviction relief (PCR) from his 2017 judgment of conviction on jury trial on the offenses of Deliberate Homicide and Tampering with Physical Evidence. We affirm.

¶3 In August 2015, the State charged Johnston with Deliberate Homicide and related Evidence Tampering regarding the death of Nicole Waller. Prior to 2013, Waller and Johnston were engaged in a tumultuous on-again, off-again relationship which culminated in early 2013 with him telling her to leave his home in Fairview, Montana, and return to her home in Kalispell, Montana.[1] On the morning of February 14, 2013, after Waller purportedly left Fairview to return to Kalispell, she mysteriously disappeared, never to be heard from again. Her body was never found. However, her vehicle, packed with her belongings and two pet guinea pigs, remained parked on the driveway outside Johnston's Fairview home that morning until he later drove it away and left it on the side of U.S.

---

[1] With a $10,000 contribution from Waller, Johnston had previously purchased and titled in his own name a double-wide mobile home for Waller and her children in Kalispell, subject to her agreement to repay him the balance of the purchase price, a debt still outstanding as of February 14, 2013.

Highway 2 near Poplar, Montana. A trailing friend then picked Johnston up and drove him back to Fairview. The friend later told police, and then testified at trial, that Johnston asked him for and was trying to find an empty 55-gallon barrel with a locking lid that morning, purportedly because he needed it for his work as a mechanic. Several days later, law enforcement found Waller's abandoned vehicle on the highway near Poplar. Upon further investigation, the State charged Johnston with Deliberate Homicide and Evidence Tampering, and the case proceeded to jury trial in October 2016. Two co-counsel assigned by the Montana Office of the State Public Defender represented Johnston at trial.

¶4 On the final day of trial, the State prosecutor made closing and rebuttal arguments which, *inter alia*, were replete with various comments and statements of personal opinion regarding: (1) Johnston's character; (2) the veracity and/or credibility of his pretrial statements and trial testimony regarding pertinent events; and (3) the strength of the State's evidence and Johnston's resulting guilt. At least seven times, the prosecutor prefaced statements with the phrase "I think" (e.g., "I . . . think it's obvious that . . . Nicole Waller is dead," "I found heart wrenching" Johnston's enjoyment of the fact that he locked Waller out of her Kalispell home after telling her to leave his Fairview home, and "I think [it's] obvious" that Johnston's acknowledged attempt(s) to deceive law enforcement about what happened was him operating in "survival mode"). The prosecutor asserted that Johnston "lied" in various regards and similarly characterized other of his testimonial assertions as "ridiculous," "crazy," and "[n]ot credible." In regard to the relative credibility of conflicting testimony regarding Johnston's stated need for a locking 55-gallon barrel the

3

morning Waller disappeared, the prosecutor commented, *inter alia*, "I think it's simple" and "I think it's easy" to recognize that Johnston "has lied and lied and lied throughout this trial," in contrast to his friend "who raised his hand under oath." He similarly characterized Johnston's explanation regarding his asserted need for a locking barrel as "ridiculous," and then stated, "I know what that barrel was for," his friend knew what it was for, and "you should know what that barrel was for as well." The prosecutor similarly remarked that, "I found it a little unusual" that Johnston "told law enforcement . . . that *he* turned off [Waller's] phone" that morning "because she kept bothering and hassling him with calls." (Emphasis added.)

¶5     In reference to testimony regarding Johnston's prior mistreatment of Waller, the prosecutor commented on Johnston's character and appealed to the emotions of the jurors by rhetorically asking "[w]ho treats a person like that," "[w]ho lies to a person like that," "what kind of man does that," and "what does that tell you about [Johnston's] character?" In regard to Johnston's enjoyment of the fact that he locked Waller out of her Kalispell home, the prosecutor similarly exclaimed, "[w]ow[,] [n]ice guy." After further discussing the evidence, the prosecutor answered his earlier rhetorical questions by stating, "I think that, again, tells us reams about who [Johnston] is." Referring to the fact that Johnston "couldn't wait a week" after Waller disappeared before clearing her belongings from her Kalispell home, and his failure to check with her family to see if they wanted any of them, the prosecutor again rhetorically asked, "what does that tell you . . . about his character?"

4

¶6     In acknowledging that the State did not know the manner in which Johnston killed Waller, the prosecutor pointed out that, "[w]e don't know, because he hid the body."  He then described Waller's missing body as "now rest[ing] in some dirty and disrespectful location, hidden by [Johnston]"—"[u]nfortunately, only [he] knows the answers to" where her body was and how she was killed.  The prosecutor ultimately asserted, *inter alia*, that "I believe" the "tight timeline" shown by the State's evidence "proves [] that only [Johnston] had the motive, . . . opportunity, and . . . means to kill Nicole Waller." Johnston's counsel did not object to any of those and similar prosecutor assertions, comments, and questions.

¶7     Upon deliberation, the jury returned guilty verdicts on both of the charged offenses. The District Court later sentenced Johnston to life in prison for Deliberate Homicide, and an additional 10 years for Evidence Tampering.  On Johnston's subsequent direct appeal of only two narrow sentencing-related assertions of error, we affirmed.  *State v. Johnston*, 2018 MT 256N, ¶¶ 10-11, 394 Mont. 387, 428 P.3d 253.

¶8     In November 2018, Johnston filed a pro se PCR petition pursuant to §§ 46-21-101(1) and -103, MCA.  He also filed several related pro se motions.  Through later-obtained counsel, he then filed an amended PCR petition in August 2020.  The District Court characterized his asserted PCR claims as assertions that: (1) he received ineffective assistance of counsel (IAC) in various regards at trial; (2) the trial evidence was insufficient to support his convictions on the charged offenses; (3) the State's failure to present at trial certain previously-disclosed evidence denied him constitutionally guaranteed due process

of law under *Brady v. Maryland*, 373 U.S. 83, 87-88, 83 S. Ct. 1194, 1196-97 (1963); and (4) certain newly-discovered evidence—the alleged exculpatory affidavit statements of an alleged former coworker—proved that he was actually innocent of the charged offenses.

¶9 On motion and resulting court order, the State obtained explanatory affidavits from both of Johnston's trial counsel regarding his asserted IAC claims.[2] At the subsequent August 2021 hearing on Johnston's asserted PCR claims, only one witness testified—one of his former trial counsel who gave supplemental testimony consistent with his prior *Gillham* affidavit. At the close of hearing, the District Court orally denied all of Johnston's asserted PCR claims, later followed by a conforming written judgment.

¶10 Johnston timely appeals the court's adverse ruling on his IAC assertions regarding trial counsel failure to object to the prosecutor's various assertions and comments regarding his character, the veracity and credibility of his pretrial statements and trial testimony, his failure to disclose the location of Waller's body and how he killed her, the strength of the State's evidence, and Johnston's resulting guilt. On appeal of district court denials of PCR claims, we review supporting findings of fact only for clear error[3] and supporting conclusions and applications of law de novo for correctness. *Beach v. State*, 2009 MT 398,

---

[2] See *Marble v. State*, 2007 MT 98, ¶¶ 2-4, 337 Mont. 99, 169 P.3d 1148, and *In re Gillham*, 216 Mont. 279, 280-82, 704 P.2d 1019, 1020-21 (1985).

[3] Lower court findings of fact are clearly erroneous only if not supported by substantial evidence, the record manifests that the lower court clearly misapprehended the effect of the evidence, or we are firmly convinced on our independent review of the record that the lower court was otherwise clearly mistaken. *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, 114 P.3d 254 (citation omitted).

¶ 14, 353 Mont. 411, 220 P.3d 667; *Hirt v. State*, 2009 MT 116, ¶ 24, 350 Mont. 162, 206 P.3d 908; *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

¶11 The Sixth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, and Article II, Section 24, of the Montana Constitution, guarantee criminal defendants the right to effective assistance of counsel at all critical stages of the proceedings. *Whitlow*, ¶ 10; *State v. McElveen*, 168 Mont. 500, 501-03, 544 P.2d 820, 821-22 (1975); *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 2063 (1984). The performance of counsel is constitutionally ineffective, however, only if both constitutionally deficient and actually prejudicial. *State v. Herrman*, 2003 MT 149, ¶ 17, 316 Mont. 198, 70 P.3d 738; *Strickland*, 466 U.S. at 685-87, 104 S. Ct. at 2063-64. A claimant must satisfy both of the required elements of an IAC claim. *Sartain v. State*, 2012 MT 164, ¶¶ 9 and 11, 365 Mont. 483, 285 P.3d 407; *Whitlow*, ¶¶ 10-14.

¶12 Under the first element, the performance of counsel is presumed constitutionally effective based on discretionary trial strategy within a broad range of reasonable professional conduct. *Whitlow*, ¶¶ 20-21; *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. To overcome that strong presumption, an IAC claimant has the "heavy burden" of affirmatively proving that the alleged IAC, viewed in the light most deferential to counsel, "fell below an objective standard of reasonableness considering prevailing professional norms" under the totality of the circumstances at issue, regardless of best or customary practice. *Ariegwe v. State*, 2012 MT 166, ¶ 16, 365 Mont. 505, 285 P.3d 424 (quoting *M.M. Miller v. State*, 2012 MT 131, ¶ 13, 365 Mont. 264, 280 P.3d 272); *Bomar v. State*,

7

2012 MT 163, ¶ 19, 365 Mont. 474, 285 P.3d 396; *Worthan v. State*, 2010 MT 98, ¶ 10, 356 Mont. 206, 232 P.3d 380 (citing *Whitlow*, ¶ 15); *Whitlow*, ¶¶ 20-21; *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Success is not the measure of effective counsel. *Bomar*, ¶ 19. Nor does effective assistance of counsel require "perfect advocacy judged with the benefit of hindsight." *Bomar*, ¶ 19 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 6 (2003)). An accused has no constitutional right to have counsel "raise every non-frivolous issue" in his or her defense. *See M.M. Miller*, ¶ 14 (internal citation omitted). The mere fact that defense counsel failed to assert a particular available defense, or take an available defensive action, is generally insufficient alone to establish that his or her performance was ineffective or deficient. *See State v. Mahoney*, 264 Mont. 89, 101-02, 870 P.2d 65, 73 (1994). Decisions as to whether and to what extent to object to questionable rulings or prosecutorial conduct generally fall within the broad range of the professional judgment and discretion of counsel regarding defense strategy and tactics. *See Whitlow*, ¶ 21; *State v. Upshaw*, 2006 MT 341, ¶ 33, 335 Mont. 162, 153 P.3d 579.

¶13 Under the second IAC element, a deficient performance of counsel was prejudicial only upon proof that a reasonable probability exists that the outcome of the proceeding would have been different but for the deficient performance. *Ariegwe*, ¶¶ 15-16; *Heath v. State*, 2009 MT 7, ¶ 17, 348 Mont. 361, 202 P.3d 118; *Strickland*, 466 U.S. at 694-95, 104 S. Ct. at 2068-69. In this context, a "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *State v. Cobell*, 2004 MT 46, ¶ 14, 320 Mont. 122, 86 P.3d 20. The mere fact that a deficient performance may have

"had some conceivable effect on the outcome of the proceeding" is insufficient to prove actual prejudice. *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067.

¶14 As pertinent here, criminal prosecutors generally "have wide latitude" during trial closing and rebuttal arguments to "comment on and argue *for any position or conclusion* regarding the nature, quality, or effect of the evidence in relation to the applicable law and the [State's] burden of proof," but only if and to the extent "based on the [record] evidence, applicable law as stated in the jury instructions, and his or her *analysis of the evidence*." *State v. B.H. Miller*, 2022 MT 92, ¶ 22, 408 Mont. 316, 510 P.3d 17 (emphasis original—internal punctuation and citations omitted). On the other hand, "[a]s applicable to the States as a matter of substantive due process implicit in the Fourteenth Amendment Due Process Clause, the Sixth Amendment to the United States Constitution, and Article II, Sections 24 and 26, of the Montana Constitution, similarly guarantee criminal defendants the right to a fair trial before an impartial jury." *B.H. Miller*, ¶ 21 (internal citations omitted). "Also implicitly guaranteed to the criminally accused as fundamental liberty interests under the Fourteenth Amendment Due Process Clause are the related rights to the presumption of innocence and the requirement that the government prove every element of a charged offense beyond a reasonable doubt." *B.H. Miller*, ¶ 21 (internal citations omitted). In conjunction with other fair trial rights, criminal defendants also have a federal and state constitutional right against compelled self-incrimination. U.S. Const. amends. V and XIV; Mont. Const. art. II, § 25. Those fundamental constitutional fair trial and associated rights thus "impose or implicate a number of highly nuanced restrictions on the

9

otherwise broad latitude that prosecutors have" regarding jury argument at trial. *B.H. Miller*, ¶ 22. Further constraining prosecutors' generally wide latitude are applicable rules of evidence, and the separate statutory command that "the jury is the exclusive judge of the credibility, veracity, weight, and effect of the evidence." *B.H. Miller*, ¶¶ 22 and 24 (citing §§ 26-1-201 through -203, MCA). Thus, as pertinent here, prosecutors generally may not: (1) "express a direct personal opinion or belief that a witness, or his or her testimony, was or was not credible, believable, reliable, or truthful"; (2) "personally vouch for the veracity or credibility of a witness or his or her testimony"; (3) "directly characterize a witness statement as a lie, or a witness or the accused as a liar or as having lied"; (4) "express a direct personal opinion or belief that the accused is guilty or the one who committed the charged offense"; or (5) "directly, indirectly, or implicitly assert or suggest that the accused has the burden of proving his or her innocence, or of disproving the [S]tate's evidence." *B.H. Miller*, ¶¶ 23-24 and 28-29 (citations omitted).

¶15 On balance then, "in contrast to a statement of or akin to a direct personal opinion, prosecutorial closing arguments and comments are generally proper if made in the context of discussing the evidence, how it relates or corresponds to the law as stated in the jury instructions (including specified witness veracity and credibility assessment guidelines), and reasonable inferences supported by the evidence." *B.H. Miller*, ¶ 26 (emphasis omitted). "While expression of direct personal opinions on witness credibility are improper, the prosecutor may nonetheless comment on, suggest, point-out, and argue reasonable inferences that [the] jury may draw from the evidence including, *inter alia*,

10

comment on the credibility of witnesses as a comment on the evidence based on conflicts and contradictions in testimony." *B.H. Miller*, ¶ 27 (internal punctuation and citations omitted). Prosecutors "may similarly argue *on the evidence* that the accused is guilty, committed the crime, or that the [S]tate has met its burden of proof," and comment on "the volume" of the incriminating evidence against the accused. *B.H. Miller*, ¶¶ 26-27 (emphasis original—citations omitted). The prosecutors may also "properly point out inconsistencies between the defendant's trial testimony and any pretrial statements or pre-*Miranda* silence to support an inference and argument that he [or she] changed his [or her] story after having time to think about the consequences." *B.H. Miller*, ¶ 30 (internal punctuation and citations omitted). They may similarly ask and argue as to which of multiple accounts provided by the defendant was the truth. *B.H. Miller*, ¶ 30 (internal citations omitted).

> [W]hile often highly nuanced, the dividing line between an improper and proper prosecutorial argument or comment regarding witness credibility or truthfulness or the guilt of the accused is whether, in the context of the entirety of the particular opening statement or closing argument at issue, the argument or comment is more akin to a statement of the prosecutor's personal opinion or direct characterization of the accused or a witness as "lying" or a "liar" (or his or her testimony as a "lie"), or rather, an argument or comment based on the prosecutor's *analysis of the evidence* regarding the nature, quality, or effect of the evidence and supported inferences in relation to the applicable law.

*B.H. Miller*, ¶ 27 (emphasis original—citations omitted).

¶16 Improper prosecutorial arguments and comments "that substantially undermine or infringe upon" an accused's fair trial rights and related constraints "are remediable by reversal of conviction *if* substantially prejudicial to the accused under the totality of the

circumstances in each case." *B.H. Miller*, ¶ 21 (emphasis added—citations omitted).  But, substantial prejudice from such misconduct is not presumed.  *B.H. Miller*, ¶ 36.  Reversal is warranted only upon "an affirmative record-based showing" that the misconduct "actually prejudiced" the accused's "right to a fair trial under the totality of the circumstances," including, *inter alia*, consideration of the misconduct in context of the balance of the prosecutor's arguments and comments as a whole.  *B.H. Miller*, ¶ 36.

¶17    As recognized by the District Court here, the large majority of the prosecutor statements and comments at issue clearly or arguably infringed, or were precariously close to infringing, on one or more of Johnston's aforementioned fair trial rights.  Many of the prosecutor's accompanying rhetorical comments regarding Johnston's character were also separately objectionable in the manifest absence of any defense-proffered good character evidence or other asserted character rebuttal predicate.  *See* M. R. Evid. 401-03, 404(a)(1), (c), and 608.  However, the respective affidavit and hearing testimonies of Johnston's co-counsel clearly manifest that they knowingly and intelligently made strategic or tactical decisions to *not* object because they thought the prosecutor's often "histrionic" arguments and comments were consistent with the defense theory of the case, not consistent with the defense theory but nonetheless ineffective and thus likely to undermine the credibility of the State's theory of the case, or close enough in context to permissible argument that the court would not likely sustain an objection.  In essence and effect, the District Court thus found and concluded that Johnston failed to overcome the presumption that the performance of his co-counsel was constitutionally effective with affirmative proof that

12

their failure to object to the prosecutorial conduct at issue clearly fell below an objective standard of reasonableness, as measured by prevailing professional norms of strategy and practice, under the totality of the circumstances of this case.

¶18 Upon our review, the pertinent findings of the District Court were not clearly erroneous, nor was its ultimate conclusion under the first IAC element based on any incorrect application or conclusion of law. In light of the independently compelling record evidence of his guilt, and his own trial admissions and related characterizations by defense counsel, Johnston has further failed show that counsels' failure to object to the prosecutorial conduct at issue was actually prejudicial under the totality of the circumstances in this case. We hold that the District Court did not erroneously deny PCR to Johnston based on his asserted IAC claims at issue on appeal.

¶19 We decide this case by memorandum opinion pursuant to our Internal Operating Rules. It shall not be cited and does not serve as precedent. Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE